IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HAYDEN OUTDOORS, INC.,

        Plaintiff,

v.                                                     Case No. 13-1288 JTM

LINDA NIEBUR and
JOHN STRATMAN,

        Defendants.

MEMORANDUM AND ORDER

The court has before it defendant John Stratman's Motion to Dismiss for Failure to State a Claim (Dkt. 12). After reviewing the parties' briefs on the motion, the court is prepared to rule.

**I. Background**

The complaint alleges the following facts. Plaintiff Hayden Outdoors signed a contract, agreeing to sell 22,720 acres of Delmer Zweygardt's farm land on June 27, 2008. The contract was an "Exclusive Right to Sell Listing Agreement," under which Hayden was entitled to a 7% commission of the final sales price. The agreement included a provision compensating Hayden if the property was sold to anyone Hayden had shown the property to or negotiated with.

In February of 2009, defendants John Stratman and Linda Niebur, agents for Mason & Morse Ranch Company, LLC, contacted Zweygardt regarding some potential buyers for his property. After hearing of this contact with its client, Hayden gave Stratman and Niebur the listing information but told Mason & Morse Ranch Company

that Stratman and Niebur should contact Hayden, rather than contacting Zweygardt directly. Zweygardt told Hayden that even if it failed to sell the land by the end of the listing agreement on June 27, 2009, he would sign a new listing agreement because he was satisfied with Hayden's performance.

Despite Hayden's warnings, Stratman and Niebur continued to contact Zweygardt about selling his property. Hayden prepared a new listing agreement, believing Zweygardt would extend its time to sell the land as he had promised. However on June 27, 2009, Zweygardt told Hayden he would not be signing the extension. On July 1, 2009, Stratman purchased Zweygardt's property. Stratman then sold portions of Zweygardt's land on August 18, 2009 for a total of over $8.2 million. The extension clause from Hayden's listing agreement was still valid and enforceable at the time of this sale, entitling Hayden to compensation for the sale of Zweygardt's land.

Later in 2009, Hayden filed suit against Zweygardt in state court alleging breach of contract. The district court awarded Hayden $437,649, based on a 7% commission of the sale by Stratman less the commission due to Stratman, Niebur and Mason & Morse Ranch Company. Zweygardt appealed the decision, and Hayden cross-appealed. The Kansas Court of Appeals affirmed the district court's ruling. On August 1, 2013, Hayden filed this suit, asserting tortious interference of contract by Stratman, Niebur and Mason & Morse Ranch Company.[1]

---

[1]The court dismissed defendant Mason & Morse Ranch Company on January 9, 2014. *See* Dkt. 22. Defendant Niebur has apparently not yet been served, as her summons was returned unexecuted. *See* Dkt. 6.

**II. Legal Standard: Motion to Dismiss Under Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming *Twombly*'s probability standard). "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' " *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2, (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

**III. Analysis**

Defendant Stratman argues that the complaint should be dismissed because Hayden filed it after the statute of limitations had run. Hayden argues the statute of limitations does not bar its claim because it could not file this suit until its state court claims against Zweygardt were fully resolved.

3

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules." *Vazirani & Assoc's Fin., LLC v. Heitz*, No. 11-1032-MLB, 2011 WL 2295027, at *2 (D. Kan. June 8, 2011) (internal citation omitted). In Kansas, tortious interference claims are subject to a two-year statute of limitations. *Id.* (citing KAN. STAT. ANN. 60-513(4)). The statute of limitations begins to run when the right to maintain a legal action arises. *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 548, 545 P.2d 312, 317 (1976). "In Kansas, a cause of action accrues 'at the time of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable.'" *Heitz*, 2011 WL 2295027 at *3 (quoting *See v. Hartley*, 257 Kan. 813, 820, 896 P.2d 1049, 1054 (Kan. 1995)). "Kansas law recognizes that a claim for tortious interference with contract accrues when the injury is reasonably ascertainable though the full actual loss may not happen until later." *Rinehart v. Saint Luke's South Hosp., Inc.*, No. 10-2209-SAC, 2011 WL 3348234, at *14 (D. Kan. Aug. 3, 2011).

Hayden filed this case on August 1, 2013. Using this date as a starting point, to be timely, the cause of action must have accrued within two years prior. But Hayden alleges that Stratman's tortious interference with contract took place in 2009, and Hayden admits that its suit against Zweygardt did not toll the statute of limitations. Therefore, Hayden's claim is time-barred unless it can show its injury was not reasonably ascertainable until after August 1, 2011. *See Heitz*, 2011 WL 2295027 at *3.

Hayden argues that it was unable to bring suit against these defendants until its breach of contract case against Zweygardt was resolved, including the appeals process.

4

Hayden notes that a breach of contract action is intended to place the injured party in the same position it would have been in but for the breach, and a double or duplicative recovery for its injury arising from a breach of contract would be invalid. Based on this, Hayden asserts that if it had recovered full compensation against Zweygardt, it would have been barred from seeking what would amount to duplicative compensatory damages against the defendants in this case. Hayden adds that since it could not have known what its recovery against Zweygardt would be, any amount of damages claimed against the defendants in this case before the first case concluded would have been too speculative. According to Hayden, this would have been a fatal flaw because "damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct" are one element of a tortious interference claim, and damages in this case "are limited to those damages not recovered from the party breaching the contract." Hayden's Memorandum in Opposition, Dkt. 19, p. 6 (citing *Maxwell v. Southwest Nat'l Bank*, 593 F. Supp. 250, 253 (D. Kan. 1984); Restatement (Second) of Torts § 774A (2)(1979)). Finally, Hayden argues that "[t]o require Plaintiff to simultaneously maintain separate suits against separate defendants with claims arising out of one set of facts" would place an undue burden upon it and the courts.

The court finds a useful example in *Phillips USA, Inc. v. AllFlex USA, Inc.*, 869 F. Supp. 842 (D. Kan. 1994). In *Phillips USA*, the plaintiffs alleged that the tortious interference of Allflex caused NJ Phillips to breach its agreement with Felton & Co. *Id.* at 851. NJ Phillips's breach and the alleged interference of Allflex gave rise to the same injuries or damages to the plaintiffs. *Id.* "The same acts and events giving rise to NJP's

breach of contract substantially form the basis of plaintiffs' tortious interference claim against Allflex . . . ." *Id.* The court reasoned that once the plaintiffs ascertained or could have reasonably ascertained injury from NJ Phillips's breach of contract, they could also have reasonably ascertained that Allflex was interfering with their contractual relationship with NJ Phillips. *Id.* "Thus, under the circumstances of this case, plaintiffs' cause of action for tortious interference began to accrue at the same time, or no later than, its cause of action accrued for breach of the . . . contract." *Id.*

Similar circumstances are present here. When Hayden ascertained the injury caused by Zweygardt's breach, it also ascertained the injury caused by the alleged tortious interference of the defendants in this case. Hayden does not argue that it was unaware of these defendants' actions until later. Therefore, Hayden's cause of action accrued at the same time its cause of action for breach of the contract accrued. *See id.* This cause of action accrued more than two years before Hayden filed this suit. Therefore, the statutory two-year limitations period bars Hayden's claims.

Hayden misinterprets the Restatement (Second) of Torts in claiming that it could not properly file suit against the defendants in this case prior to the resolution of its case against Zweygardt. The Restatement (Second) states:

> In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.

Restatement (Second) of Torts § 774A(2)(1979). Additionally, comment e to the Restatement (Second) of Torts § 774A(2) states:

6

> The fact that the plaintiff may have a cause of action against the person who has broken his contract does not prevent recovery against the defendant who has induced or otherwise caused the breach, or reduce the damages recoverable from him. The defendant and the contract breaker are both wrongdoers (compare § 875), and each is liable for the entire loss that he has caused. Even a judgment obtained for breach of the contract if it is not satisfied does not bar or reduce recovery from the one who has caused the breach. But since the damages recoverable for breach of the contract are common to the actions against both, any payments made by the one who breaks the contract or partial satisfaction of the judgment against him must be credited in favor of the defendant who has caused the breach.
>
> Conversely, an action or judgment against the one who causes the breach without satisfaction will not bar or reduce recovery from the one who breaks the contract; but to the extent that there is duplication of the damages any payments made by the tortfeasor must be credited in favor of one who has broken the contract.

According to the Restatement (Second), Hayden was not prohibited from filing the instant suit before its action against Zweygardt was complete. Hayden could have sued Stratman and the other defendants in this case for the full amount of the damages it suffered from Zweygardt's breach, even though the *recoverable* damages assessed against parties would be limited to the total amount of damages caused by the breach.

The court is not persuaded by Hayden's argument that any damages claimed against these defendants would have been too speculative before the completion of its case against Zweygardt. Hayden's damages as a result of the defendants' alleged tortious interference are essentially the same as Hayden's damages from Zweygardt's breach of contract. The fact that Hayden could not know the precise amount that would be awarded in one case does not make the amount of damages awardable in the other

7

case "too speculative." Only the recoverable damages would be speculative, but knowing the amount of damages that are recoverable from the defendant is not a required element in a tortious interference case.

Finally, the court must address Hayden's argument that its interpretation would have required it, unjustly, to file multiple simultaneous lawsuits against Zweygardt and the defendants in this case, forcing it to "[withdraw] from one if it is successful in the other." Hayden had other options available to comply with the statute of limitations. Rather than filing multiple simultaneous lawsuits, Hayden could have brought one suit against all the parties, ensuring it had the opportunity to hold all appropriate parties responsible for its damages and determining what amount of damages each party would be held liable for. Alternatively, Hayden could have sued Zweygardt first, as it did, and then filed this suit on the final day of the period of limitations. Although some overlap between the two cases would exist, its burden on Hayden would have been minimal.

The ultimate question the court faces in ruling on Stratman's motion is whether Hayden could have filed this suit without knowing the amount of damages it would be awarded in its lawsuit against Zweygardt. The court finds no legal barriers to Hayden's filing this lawsuit before the period of limitations ran. When a complaint shows on its face that the applicable statute of limitations has run, an action is subject to dismissal for failure to state a claim upon which relief can be granted. *Turner and Boisseau, Inc. v. Nationwide Mut. Ins. Co.*, 944 F.Supp. 842, 844 (D. Kan. 1996). Accordingly, the court grants Stratman's motion to dismiss.

IT IS THEREFORE ORDERED this 28th day of January, 2014, that defendant Stratman's Motion to Dismiss (Dkt. 12) is granted.

IT IS ALSO ORDERED that Hayden Outdoors must show good cause within fourteen days of the filing of this order why its claims against defendant Linda Niebur should not be dismissed for failing to comply with the statute of limitations.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE